1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 83013)
2  STEPHEN J. NEWMAN (State Bar No. 181570)
   2029 Century Park East, Suite 1800
3  Los Angeles, California 90067-3086
   Telephone: 310-556-5800
4  Facsimile: 310-556-5959

5  HELLER EHRMAN WHITE & McAULIFFE
   JONATHAN P. HAYDEN (State Bar No. 104520)
6  ANNA S. McLEAN (State Bar No. 142233)
   333 Bush Street
7  San Francisco, California 94101-2878
   Telephone: 415-772-6000
8  Facsimile: 415-772-6268

9  Attorneys for Defendants

10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13              OAKLAND DIVISION

14
   IN RE:                              )  Case No. C02-1240 CW
15                                     )  (and related cases C02-2529, C02-4646,
   HOUSEHOLD LENDING LITIGATION        )  C02-4867, C02-5520 and C03-0368)
16                                     )
                                       )  CLASS ACTION
17                                     )
                                       )  **ORDER GRANTING STIPULATION RE**
18                                     )  **MODIFICATION OF SETTLEMENT**
                                       )  **AGREEMENT**
19                                     )

20

21         WHEREAS, this Court entered its final approval order in regard to the Stipulation and

22  Agreement of Settlement (the "Settlement") on April 30, 2004; and

23         WHEREAS, the Settlement provides, at Section III(A)(5), for the creation of a "Foreclosure

24  Avoidance Program" (the "FAP"), which is designed to provide financial relief to low-income

25  Class Members[1] at risk of losing their homes to foreclosure; and

26

27  ─────────────────
    [1] All capitalized terms used herein, unless otherwise defined, shall have the same meaning as is set
28  forth in the Settlement.

    50307436v3
    ─────────────────────────────────────────────────
           STIPULATION AND [PROPOSED] ORDER RE MODIFICATION OF SETTLEMENT
                   AGREEMENT – Case No. C02-1240 CW (and related cases)

1    WHEREAS, the Settlement sets forth an aggregate funding level of $72,000,000 for the
2 FAP (the "Funding Cap"); and

3    WHEREAS, the Settlement further sets forth that HFC/Beneficial is entitled to credit
4 against the Funding Cap for certain extraordinary relief, up to a maximum credit of $12,000,000, as
5 described in greater detail in Section VI of Exhibit 1 to the Settlement (the "Extraordinary Relief
6 Subcap"); and

7    WHEREAS, the parties believe that the Funding Cap and the Extraordinary Relief Subcap
8 will be reached in advance of the five year period described in Section III(A)(5)(a) of the
9 Settlement Agreement; and

10   WHEREAS, HFC/Beneficial is prepared to enhance the FAP by increasing the Funding
11 Cap and the Extraordinary Relief Subcap by a total of $10,000,000 (TEN MILLION DOLLARS),
12 in consideration for a variation in the administration of the "Live Check" provisions of the
13 Settlement, as set forth in greater detail below; and

14   WHEREAS, Section III(B)(12) of the Settlement sets forth certain limitations for a three
15 year period on the use of "Live Checks" for marketing purposes (the "Live Check Terms"); and

16   WHEREAS, Plaintiffs and Class Counsel believe that adequate protection of the Class can
17 be obtained by modifying the Live Check Terms to allow use of Live Check marketing, subject to
18 restrictions on the number of real estate secured loans booked through such marketing; and

19   WHEREAS, Plaintiffs and Class Counsel believe that the Class will benefit immensely
20 from the $10 million in increased funding for the FAP, and that this benefit vastly outweighs any
21 impact to the Class from modifying the Live Check Terms as set forth below;

22   WHEREAS, Plaintiffs, Class Counsel and HFC/Beneficial believe that additional notice to
23 the Class should not be required, in light of the nature of the modification and the prohibitive cost
24 of giving further notice to the more than 900,000 Class Members; and

25   WHEREAS, Section XII of the Settlement provides that this Court retains jurisdiction to
26 approve amendments to the Settlement, and to address issues relating to implementation of the
27 Settlement.

28

**NOW, THEREFORE, THE PARTIES, BY AND THROUGH COUNSEL, STIPULATE AND AGREE AS FOLLOWS:**

1. Upon approval of this stipulation, HFC/Beneficial shall not be required to comply with the requirements set forth in the second, third and fourth sentences of Section III(B)(12) of the Settlement (relating to use of Live Checks as solicitation leads). Notwithstanding the foregoing, HFC/Beneficial shall comply with the following restrictions between July 30, 2006 and April 30, 2007: (a) the percentage of real estate secured loans made to customers who are directly upsold from a Live Check shall not exceed 4% (FOUR PERCENT) of the booked Live Checks from a Live Check campaign, calculated by reference to the number of loans within six months of initial booking; (b) the percentage of real estate secured loans directly upsold from Live Check customers or booked directly into a real estate secured loan as a result of the Live Check campaign shall not exceed 6% (SIX PERCENT) of the total loans booked from a Live Check campaign, calculated by reference to the number of loans within six months of the initial booking; (c) HFC/Beneficial shall limit the total number of real estate secured loans made to customers who received a Live Check within the previous six months to not more than 0.1% (ONE TENTH OF ONE PERCENT) of the total number of Live Checks mailed.

2. Upon approval of this stipulation: HFC/Beneficial will increase the Funding Cap set forth in Section III(A)(5)(a) of the Settlement as the "aggregate benefit amount" from $72,000,000 to $82,000,000 (EIGHTY-TWO MILLION DOLLARS); the Year 4 annual target will increase from $12,000,000 to $17,000,000 (SEVENTEEN MILLION DOLLARS); the Year 5 annual target will increase from $10,000,000 to $15,000,000 (FIFTEEN MILLION DOLLARS); the Year 1 through Year 3 annual targets shall remain unchanged; the Extraordinary Relief Subcap shall, as to relief granted subsequent to the date of approval of this stipulation, be deemed increased from $12,000,000 to $22,000,000 (TWENTY-TWO MILLION DOLLARS); and the figure "$72,000,000" set forth in Section III(A)(5)(b) of the Settlement shall be deemed amended to read "$82,000,000". If the former Funding Cap is exceeded prior to the date of approval of this stipulation, HFC/Beneficial shall nonetheless receive credit against the new $82,000,000 Funding Cap for FAP relief granted in the interim.

3. This stipulation shall be null and void and of no effect if it is not approved as submitted.

4. This stipulation shall be null and void and of no effect if the Court directs that further notice to the Class should be given.

Dated: February 28, 2006　　　　　　　　　STROOCK & STROOCK & LAVAN LLP
　　　　　　　　　　　　　　　　　　　　　　　JULIA B. STRICKLAND
　　　　　　　　　　　　　　　　　　　　　　　STEPHEN J. NEWMAN

　　　　　　　　　　　　　　　　　　　　　　　HELLER EHRMAN WHITE & McAULIFFE
　　　　　　　　　　　　　　　　　　　　　　　JONATHAN P. HAYDEN
　　　　　　　　　　　　　　　　　　　　　　　ANNA S. McLEAN


　　　　　　　　　　　　　　　　　　　　　　　By:　/s/ Stephen J. Newman
　　　　　　　　　　　　　　　　　　　　　　　　　　Stephen J. Newman
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants

Dated: February 28, 2006　　　　　　　　　COTCHETT, PITRE, SIMON & McCARTHY
　　　　　　　　　　　　　　　　　　　　　　　JOSEPH P. COTCHETT, JR.
　　　　　　　　　　　　　　　　　　　　　　　NIALL P. McCARTHY
　　　　　　　　　　　　　　　　　　　　　　　CHARLES E. TILLAGE


　　　　　　　　　　　　　　　　　　　　　　　By:　/s/ Niall P. McCarthy / by permission SJN
　　　　　　　　　　　　　　　　　　　　　　　　　　Niall P. McCarthy
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Certain Plaintiffs and for the Class


**ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: ___3/2/06_____.

　　　　　　　　　　　　　　　　　　　　　　　/s/ CLAUDIA WILKEN

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　THE HONORABLE CLAUDIA WILKEN
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE